IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

| | | |
|---|---|---|
| HELENA SCHOOL DISTRICT #1, | ) | CV 09-21-H-DWM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| YELLOWSTONE PIPELINE COMPANY, | ) | |
| a Delaware corporation, and | ) | |
| CONOCO PHILLIPS PIPELINE | ) | |
| COMPANY, a Delaware corporation, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## I.  Introduction

Plaintiffs City of Helena, Montana (the City) and Helena School District #1

(the School District) brought this action against Yellowstone Pipeline Co.

(Yellowstone) and Conoco Phillips Pipeline Co. (Conoco) to recover damages for the removal of trees located on Plaintiffs' property.  The School District sued for trespass to timber under Mont. Code Ann. § 70-16-107, alleging the trespass was willful and malicious, entitling them to treble damages under Mont. Code Ann. § 70-16-107(2).  The School District also alleges that permission to remove the trees was secured though misrepresentation.  Additionally, Plaintiff seeks contract damages for breach of easement.  Defendants filed a Notice of Settlement with the City on June 23, 2010 (see dkt # 49), leaving the School District as sole plaintiff in this action.  Defendants move for summary judgment arguing (1) removal of the trees was privileged conduct under express easement and therefore not trespass, and (2) Defendants are not liable for contract damages because the trees interfered with their rights under the easement.  For the reasons that follow, Defendants' motion shall be granted.

## II. Background

Conoco operates a pipeline owned by Yellowstone, which runs through the School District's property.  *See* SOF ¶ 1-4.  The pipeline is subject to federal laws and regulations, specifically 40 C.R.F. ¶ 195, which sets minimum operating standards.  SOF ¶ 8.

In 1954, Alice Root Laird (the School District's predecessor in interest) granted an easement (Easement) to Yellowstone by way of deed (Laird Deed)

dated October 29, 1953.  SOF ¶ 5.  The Easement grants Yellowstone "the right to lay, maintain, inspect, operate, protect, repair, replace and remove a pipe line [sic] for the transportation of liquids and/or gases" through the property.  SOF ¶ 6; SGI ¶ 2.  The Easement also grants "the right of unimpaired access to said pipe line [sic] and the right of ingress and egress on, over and though said land for the purpose necessary and incident to the exercise by grantee of the rights hereunder . . . ." SOF ¶ 6.  It does not designate a specific width for the right-of-way.  SGI ¶ 1.  The Easement provides "Grantors agree not to build, create or construct any obstruction . . . over said pipe line [sic] or lines, nor permit the same to be done by others." SOF ¶ 7.  The Easement also has language concerning damages: "[i]n addition to the above consideration, Grantee agrees to pay any damages which may arise to crops, buildings, drain tile, fences and timber by reason of Grantee's operations." SGI ¶ 5.

In April 2008, Defendants began the maintenance of the pipeline relevant to this claim, including clearing trees and brush along the pipeline corridor.  SOF ¶ 11.  Mature trees had grown on the School District's property and the trunks of the trees aligned in a row a few feet south of the pipeline.  SOF ¶ 9.  A 2010 inspection confirmed the trees were located 5-10 feet from the pipeline with canopies directly above it.  ¶ SOF 34.

On April 11, 2008, Larry Ostwald (claims advisor for Yellowstone) e-mailed Walt Chancy (Capital High Assistant Principle) to inform the School District of the need to remove the trees so Yellowstone could inspect the right-of-way by fixed wing aircraft.  SOF ¶ 13.  He also explained that tree roots can cause corrosion and other damage to the pipeline's protective coating.  *Id*.  Ostwald told Chancy the trees were on Yellowstone's property and the School District had no authority to grant permission to cut the trees.  SGI ¶ 4.

On April 15, an on-site meeting occurred between Chancy, Powell, Ostwald, and Loobey (area supervisor for Yellowstone) to discuss the removal of the trees.  SOF ¶ 17.  At the meeting reasons for removing the tress were discussed, such as visibility, accessibility, and safety hazards.  SOF ¶ 18.

On April 16, 2008, Ostwald sent a letter to Dave Powell (the School District's Facilities Manager) explaining the need to remove the trees.  SOF ¶ 20.  This letter stated Yellowstone would "remove the trees, grind and treat the stumps and remove all debris from the work area."  *Id*.  A right-of-way deed for a strip of land 40 feet wide, 20 feet on each side of a center line was included with the letter.  SGI ¶ 3.  The attached deed applied to the  NW1/4 of the section, whereas the appropriate deed applies to NE1/4 of the same section.  SOF ¶ 21.  Powell did not know how to interpret the deed and passed it on to his supervisor, John Carter.

4

SOF ¶ 22.  Carter did not read the entire letter.  SOF ¶ 25.  He did not pass it on to legal counsel nor did he seek advice in interpreting the deed.  SOF ¶ 26.  After the trees had been cut it was discovered that the deed attached to the letter was not controlling.  SGI ¶ 3.

Yellowstone hired Asplundh Tree Expert Co., to remove the trees.  SOF ¶ 35.  The trees were cleared from the School District's property between June 16 and June 26, 2008.  Affidavit of Larry Ostwald ¶ 11 (dkt # 28-3).

### III.  Legal Standard

Summary Judgement is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgement as a matter of law."  F.R.Civ.P. 56(c).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).   An adverse party may not rely on mere allegations or denials of the pleading, but their response, by affidavits or as otherwise provided, must set forth specific facts showing a genuine issue for trial.  F.R.Civ.P. 56(e).  If there is no genuine issue of material fact, the court must determine whether the moving party is entitled to judgement as a matter of law.  F.R.Civ.P. 56(c).

# IV.  Analysis

## A.    Trespass to Timber

Defendants assert their actions were not trespass but rather privileged conduct under express easement.  They also argue Plaintiff was aware of their plans and granted them permission to enter on to the property and cut down the trees.  Plaintiff responds that questions of fact remain concerning the scope and breadth of the Easement.[1]

Montana Code Annotated § 70-16-107 states a person who cuts down trees on the land of another, <u>without lawful authority</u>, is liable to the owner of the land for either (1) the amount of damages if the trespass was accidental or casual, or (2) treble damages if the trespass was willful, wanton, or malicious.  However, "[c]onduct that would otherwise constitute an intentional trespass is not unlawful if it is privileged conduct pursuant to an easement."  *Lee v. Musselshell County*, 2004 MT 64, ¶ 30, 320 Mont. 294, 87 P.3d 423 (citations omitted).

Although the Easement does not designate a specific width, nor expressly

---

[1]Plaintiff also states a question of fact exists as to whether Defendants misrepresented the deed and ownership of the property in an attempt to induce permission to cut down the trees. The Court need not reach the misrepresentation issue because the Defendants' privileged conduct argument is dispositive.  Defendants need not acquire permission to lawfully execute their rights under the Easement.  Moreover, the School District has not shown they relied on the misrepresentation.  Reliance is a key element to a misrepresentation claim.  *Deichl v. Savage*, 216 P.3d 749, 753 (Mont. 2009).

grant permission to remove trees growing on the Easement, the parties agree "where the grant or reservation is general in its terms" the breadth and scope of the easement must be determined by what "is reasonably necessary and convenient for the purpose for which the easement was created." *Mattson v. Montana Power Co.,* 2009 MT 286 ¶ 17, 352 Mont. 212, 215 P.3d 675 (citing *Guthrie v. Hardy*, 2001 MT 122 ¶ 47, 305 MT 367, 28 P.3d 467). It is undisputed that the Easement grants express right to "unimpaired access" to the pipeline as well as the right to "lay, maintain, inspect, operate, protect, repair, replace, and remove a pipeline." (Laird Deed, dkt #42-1). Therefore the scope and breadth of the Easement must be interpreted to allow Defendants to carry out these purposes. *Leichtfuss v. Dabney*, 2005 MT 271, ¶ 40, 329 Mont. 129, 122 P.3d 1220 (quoting Restatement (second) of Property: Servitudes § 4.1(1), at 496-97).

Defendants argue that removing trees located within 10 feet of a federally regulated pipeline is not unreasonable. They establish this through expert opinion and case law. Expert Todd Tullio (*see* dkt # 31-1) offered three reasons why the removal of the trees was reasonable and necessary for the safe operation of the pipeline.

First, their removal was necessary to visually inspect the pipeline right-of-way. The pipeline is subject to C.F.R. § 195, which requires the pipeline to be

patrolled at intervals not exceeding three weeks, but at least 26 times a year.

Because this section is located in a "high consequence" urban area, it is patrolled

weekly.  Tullio stated the most effective and efficient way to preform the patrols is

by aircraft.  Trees growing over and adjacent to the pipeline hinder the ability to

inspect the pipeline by air for potential safety hazards.

Second, the trees interfere with Defendants' ability to promptly and

effectively respond to emergencies.  If an emergency did occur, Defendants would

have to first remove the trees before they could excavate, inspect, repair and

replace the pipeline.  Tullio stated a fifty-foot wide right-of-way is necessary to

comply with OSHA trenching requirements and to safely and effectively respond

to a leak or other dangerous situation.

Third, roots can damage the protective coating and can cause undue force to

the pipeline.  Tullio presented evidence that mature tree roots are considered a

safety hazard by the Pipeline Hazardous Material Safety Administration for these

reasons. Tullio's affidavit included excerpts from *Transmission Pipelines & Land*

*Use: A Risk Informed Approach* by the National Academy of Sciences.  The report

states in very general terms "[i]nappropriate uses, such as heavy industry and

landfills, buildings constructed to close to the pipeline, and the growth of mature

trees on top of a pipeline, can compromise the safety of the pipeline." However,

these materials do not specify what is a safe distance from the pipeline for growing trees, nor do they say how to determine when the roots of a tree may be interfering with the pipeline.  Nonetheless, the materials show that trees and their roots can raise safety concerns.

Moreover, case law supports the proposition that a fifty-foot wide easement is not unreasonable.  *See Columbia Gas Transmission Co., v. Perry*, 623 F.Supp.2d 409, 413 (S.D.N.Y. 2008) ("this width [50 feet] squares with what other courts have found in similar cases."); *Andrews v. Columbia Gas Transmission Co.*, 544 F.3d 618, 626 (6th Cir. 2008) ("[A]lmost every court to construe an easement with similar language as the one here has concluded that a twenty-five foot right of way on both sides of the pipeline was reasonably necessary and convenient.").

Yellowstone and Conoco have met their burden of establishing that removing trees located within ten feet of a federally regulated pipeline is not unreasonable.  The burden now shifts to the School District to offer a material fact in dispute.

The School District does not supply any affidavits or expert opinions to refute Defendants' evidence.  It does not point to any specific fact, which would suggest Defendants' actions were unreasonable.  Instead, the School District asserts the determination of what is reasonably necessary is a question of fact.  The

9

School District cites two cases for the proposition that what is reasonably

necessary under an easement cannot be decided on summary judgement.

In *Mattson v. Montana Power Co.*, landowners brought trespass and breach

of easement actions against the operators of a dam.  2009 MT 286, 352 Mont. 212,

215 P.3d 675.  The Court found genuine issues of fact existed as to whether

erosion caused by the dam operators was reasonably necessary for the exercise of

their rights under the easement.  *Id.* at ¶ 41.  Defendants point out the parties in

*Mattson* came forth with conflicting evidence on the issues.  *Id.*  Here the School

District offers no evidence of which activities are within the scope of the

Easement, and which are not.  In addition, the Court did not preclude the

possibility of summary judgement in *Mattson*, but found it inappropriate at that

time because discovery was not complete.  *Id.* at ¶¶ 40-41.

The School District also relies on *Township of Piscataway v. Duke Energy*,

488 F. 3d 203 (3rd Cir. 2007).  There the court found a question of fact remained

as to whether the scope of the easement included authority to remove trees from

the right-of-way, even though an easement expressly granted the right to inspect

and maintain the pipeline.  Defendants counter this argument by pointing out

*Piscataway* was decided in favor of the pipeline operators.  In *Piscataway*, the

Third Circuit reversed the lower court's grant of summary judgement to the

10

servient owners, finding the pipeline operators presented sufficient evidence about the need for aerial inspection, emergency access, and dangers posed by trees roots to defeat summary judgement.  *Id.* at 210-213.

In both *Mattson* and *Piscataway*, material issues of facts precluded summary judgement.  Neither case holds that what is reasonably necessary can not be decided on summary judgement.[2]

In addition, Defendants argue that property owners do not retain the right to use the land in ways that are inconsistent or interfere with the rights reserved to the owner of the easement.  *Flynn v. Siren*, 219 Mont. 359, 361, 711 P.2d 1371, 1372 (1986).  "[W]here a property owner unlawfully obstructs or interferes with the easement rights of an easement holder the holder of the easement rights has authority to remove those obstructions."  *Rueckel v. Texas Eastern Transmission Corp.*, 444 N.E.2d 77, 84 (Ohio App. 1981) (citations omitted).  In *Rueckel*, landowners sued for damages to pine trees that resulted from pipeline maintenance operations.  The court found the plaintiffs were not  "entitled to grow trees on the right-of-way that obstruct, unreasonably burden and interfere with the exercise of

---

[2]Not only do these cases not hold that what is reasonably necessary under an easement is a factual determination that can only be determined by a jury, Plaintiff has failed to raise discovery issues that support finding summary judgment to be premature at this time, or introduce evidence to create a question of fact that must go to a jury.  With the record before the Court, there is only one possible outcome–Defendants' actions fall within the scope of the Easement and summary judgment is appropriate.

the easement rights by the owners of those rights," and the defendants have "the

right to remove such trees from their rights-of-way which, in fact, do obstruct,

unreasonably burden and interfere with the exercise of their rights as easement

owners." *Id.* at 82-83.

Trees can interfere with the right to inspect, access, and operate a pipeline to

such an extent that easement owners have authority to remove them.  *See Avery v.*

*Colonial Pipeline Co.*, 444 S.E.3d 363, 365 (Ga. App. 1994) (holding pipeline

operators  were "entitled, as a matter of law, to remove trees and vegetation from

the easements in order to aerially inspect the pipelines and access them."); *id*. at

366 (holding the pipeline operators  "have a legal right to remove trees and

vegetation from easement surfaces so as to give reasonable access to maintenance

crews").

The School District did not retain the right to grow trees over the pipeline in

a way that obstructed or interfered with Defendants' rights pursuant to the

Easement.  The uncontradicted evidence shows the trees interfered with several of

Defendants' express rights.   The trees constrained the right to inspect the pipeline

by impairing the ability to visually inspect the pipeline via fixed wing aircraft.

The trees interfered with the right of unimpaired access to the pipeline by

impeding necessary evacuation and emergency equipment.  In addition, the trees

12

and their roots caused safety concerns, which frustrated Defendants' ability to operate a pipeline in compliance with government guidelines and regulations. Because the trees obstructed and interfered with the pipeline, Defendants were authorized to remove them.

Removing trees located in such close proximity to the pipeline was reasonably necessary and convenient for the access, safe operation, inspection, maintenance, protection, and repair of the pipeline.  Therefore Defendants' actions were privileged conduct pursuant to the Easement.  As such, Defendants had lawful authority to remove the trees and did not commit trespass.

## B.    Breach of Easement

Plaintiff seeks to recover contract damages because the Easement provides: "[i]n addition to the above consideration, Grantee agrees to pay any damages which may arise to crops, buildings, drain tile, fences and timber by reason of Grantee's operations."  The School District contends a question of fact remains as to what the original parties to the Laird Deed meant by "timber" as set out in the damages clause.  Defendants assert they do not have to compensate Plaintiff for trees that interfered with their rights under the Easement regardless of whether or not the trees constituted "timber."  The Court need not address the meaning of the

word "timber" because Defendants' argument is dispositive.[3]

It is unreasonable to force an easement holder to compensate a land owner for engaging in an activity that is inconsistent and interferes with the easement holder's exercise of the easement. *Rueckel*, 444 N.E.2d at 83. This includes "the right to engage in appropriate pipeline maintenance operations." *Id.*

In *Rueckel,* the Court found a damage clause, similar to the one in the Laird Deed, referred only to damages resulting from the original construction of the pipeline. *Id.* The Court held the pipeline operators did not have to compensate property owners for trees planted after the original construction of the pipeline because the trees obstructed, unreasonably burdened, and interfered with the maintenance of the pipeline. *Id.* at 85.

Planting and maintaining trees over the pipeline Easement was not a right retained by the School District. The trees on the School District's property were planted after the construction of the pipeline. As discussed above, the trees interfered with the Defendants' rights pursuant to the Easement. It would be unreasonable to force Defendants to compensate Plaintiff for engaging in a restricted activity. Therefore, Defendants are not liable for damages.

---

[3]Plaintiff suggests extrinsic evidence may show the parties meant to include shade or ornamental trees as timber in the damages clause. However, Defendants' argument prevails regardless of whether the "timber" was for commercial or other purposes.

## V. Conclusion

Based on the foregoing, IT IS HEREBY ORDERED that Defendants'
Motion for Summary Judgment Against City of Helena (dkt #29) is DENIED as
moot.

IT IS FURTHER ORDERED that Defendants' Motion for Summary
Judgment Against Helena School District No. 1 is GRANTED.  The Clerk of
Court is directed to enter judgment in favor of Defendants and close the case.

Dated this 10th day of August, 2010.


DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT